IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA
Waycross Division

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 9 CASE |
| | ) | NUMBER 12-50305 |
| HOSPITAL AUTHORITY OF CHARLTON COUNTY | ) | |
| | ) | |
| Debtor | ) | |
| ————————————————— | ) | |
| | ) | |
| UNITED STATES TRUSTEE | ) | |
| | ) | **FILED** |
| Movant | ) | Lucinda B. Rauback, Acting Clerk |
| | ) | United States Bankruptcy Court |
| v. | ) | Brunswick, Georgia |
| | ) | *By lmorris at 12:09 pm, Jul 03, 2012* |
| HOSPITAL AUTHORITY OF CHARLTON COUNTY | ) | |
| | ) | |
| Respondent | ) | |
| ————————————————— | ) | |
| | ) | |
| HOSPITAL AUTHORITY OF CHARLTON COUNTY | ) | |
| | ) | |
| Movant | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES TRUSTEE | ) | |
| | ) | |
| Respondent | ) | |
| | ) | |

## OPINION AND ORDER DENYING HOSPITAL AUTHORITY OF CHARLTON COUNTY'S MOTION TO CONVERT AND GRANTING U.S. TRUSTEE'S MOTION TO DISMISS

This matter is before me on the Motion to Dismiss (ECF No. 6) filed by the U.S. Trustee and the Motion to Convert from Chapter 9 to Chapter 11 (ECF No. 7) filed by the Hospital Authority of Charlton County ("Hospital Authority"). The parties

AO 72A

(Rev. 8/82)

agree that the Hospital Authority is not eligible for chapter 9, but the parties differ in their theories. According to the U.S. Trustee, the Hospital Authority is not eligible to be a debtor under chapter 9 because the Bankruptcy Code requires specific state authorization for an entity to file chapter 9, and the state of Georgia explicitly prohibits authorities created pursuant to state law from filing a petition for debt relief. See 11 U.S.C. § 109(c)(2); O.C.G.A. § 36-80-5. According to the Hospital Authority, it is not eligible for chapter 9 because it is not a "municipality" as required by 11 U.S.C. § 109(c)(1). See 11 U.S.C. § 101(40) (defining "municipality" to mean a "political subdivision or public agency or instrumentality of a State").

The Hospital Authority seeks to convert the case to chapter 11. However, the U.S. Trustee argues that the Hospital Authority is not eligible for chapter 11 because it is a "governmental unit," and therefore not a "person" entitled to chapter 11 relief. See 11 U.S.C. §§ 109(d), 101(41). A hearing was held on May 29, 2012, after which the parties submitted briefs outlining their positions. After reviewing the briefs, and as a matter of law, the Motion to Convert is denied and the Motion to Dismiss is granted for the reasons that follow.

## FINDINGS OF FACT

The state of Georgia's "Hospital Authorities Law" provides for the creation and operation of hospital authorities in cities and counties within the state. O.C.G.A. §§ 31-7-70 to 31-7-96. According to the law, upon adoption of a resolution by a county or municipal corporation's governing body declaring there is a need for such authority, each hospital authority shall be a "public body corporate and politic" and shall consist of a board appointed by the governing body of the county or municipal corporation in which it is located. O.C.G.A. § 31-7-72. The board members "shall receive no compensation for their services, . . . but may be reimbursed for their actual expenses . . . ." O.C.G.A. § 31-7-74. In addition, hospital authorities "shall be granted the same exemptions and exclusions from taxes as are now granted to cities and counties for the operation of [similar] facilities." O.C.G.A. § 31-7-72(e)(1).

The functions and powers of hospital authorities are as follows:

> Every hospital authority **shall be deemed to exercise public and essential governmental functions** and shall have all the powers necessary or convenient to carry out and effectuate the purposes and provisions of this article, including, but without limiting the generality of the foregoing, the following powers:
>
> (1) To sue and be sued;
>
> (2) To have a seal and alter the same;

(3) To make and execute contracts and other instruments necessary to exercise the powers of the authority;

(4) To acquire by purchase, lease, or otherwise and to operate projects;

(5) To construct, reconstruct, improve, alter, and repair projects;

(6) To sell to others, or to lease to others . . . , any lands, buildings, structures, or facilities . . . . In the event a hospital authority undertakes to sell a hospital facility, such authority shall, prior to the execution of a contract of sale, *provide reasonable public notice of such sale and provide for a public hearing to receive comments from the public concerning such sale*. . . .

(7) To lease . . . for operation by others any project, provided that the authority shall have first determined that such lease will promote the public health needs of the community by making additional facilities available in the community or by lowering the cost of health care in the community . . . ;

(8) To extend credit or make loans to others for the planning, design, construction, acquisition, or carrying out of any project . . . ;

(9) To acquire, accept, or retain equitable interests, security interests, or other interests in any property, real or personal, by mortgage, assignment, security agreement, pledge, conveyance, contract, lien, loan agreement, or other consensual transfer in order to secure the repayment of any moneys loaned or credit extended by the authority;

(10) To establish rates and charges for the services and use of the facilities of the authority;

(11) To accept gifts, grants, or devises of any property;

(12) To acquire by the exercise of the *right of eminent domain* any property essential to the purposes of the authority;

(13) To sell or lease within 20 years after the completion of construction of properties or facilities operated by the hospital authority where grants of financial assistance have been received from federal or state governments, after such action has first been approved by the department in writing;

(14) To exchange, transfer, assign, pledge, mortgage, or dispose of any real or personal property or interest therein;

(15) To mortgage, pledge, or assign any revenue, income, tolls, charges, or fees received by the authority;

(16) To **issue revenue anticipation certificates** or other evidences of indebtedness for the purpose of providing funds to carry out the duties of the authority; provided, however, that the maturity of any such indebtedness shall not extend for more than 40 years;

(17) To borrow money for any corporate purpose;

(18) To appoint officers, agents, and employees;

(19) To make use of any facilities afforded by the federal government or any agency or instrumentality thereof;

(20) To receive, from the governing body of political subdivisions issuing the same, proceeds from the sale of general obligation bonds or other county obligations issued for hospital authority purposes;

(21) To exercise any or all powers now or hereafter possessed by private corporations performing similar functions;

(22) To make plans for unmet needs of their respective communities;

(23) To contract for the management and operation of the project by a professional hospital or medical facilities consultant or management firm. . . .

(24) To provide management, consulting, and operating services . . . ;

(25) To provide financial assistance to individuals for the purpose of obtaining educational training in nursing or another health care field if such individuals are employed by, or are on an authorized leave of absence from, such authority or have committed to be employed by such authority upon completion of such educational training; . . . ;

(26) To exercise the same powers granted to joint authorities in subsection (f) of Code Section 31-7-72; and

(27) To form and operate, either directly or indirectly, one or more networks of hospitals, physicians, and other health care providers and to arrange for the provision of health care services through such networks . . . .

O.C.G.A. § 31-7-75 (emphasis added).

In addition, hospital authorities are prohibited from "operat[ing] or construct[ing] any project for profit." O.C.G.A. § 31-7-77. Instead, hospital authorities must adjust their prices to produce only enough revenue to cover costs with reasonable reserves. Id. They are authorized to issue revenue anticipation certificates, which are "declared to be issued for **an essential public and governmental purpose** and, together with interest thereon and income therefrom, shall be exempt from all taxes." O.C.G.A. § 31-7-79 (emphasis added).

Although a hospital authority does not have the power to tax, cities and counties can contract with hospital authorities to provide medical care to indigent residents, and the cities and

counties are authorized to pay for such services from the general fund or by levying an ad valorem tax. O.C.G.A. §§ 31-7-84(a), 31-7-85. Finally, the dissolution of a hospital authority requires joint action of the authority's board of trustees and the county's governing body. O.C.G.A. § 31-7-89. Upon dissolution, a hospital authority cannot, in the absence of other specific legislation, convey any of its property to a private person, association, or corporation. Id.

In 1970, the Charlton County Board of Commissioners adopted an ordinance ("Ordinance") establishing the Hospital Authority. (ECF No. 58-1 at 3-6.) In accordance with the Hospital Authorities Law, the Ordinance created a "public body corporate and politic" consisting of "nine trustees to be appointed by resolution of the governing body of Charlton County." (Id. at 3.) According to the Ordinance, the Board of Commissioners "deem[ed] it to be in the best interest of Charlton County and the interest and general welfare of the citizens residing therein" to activate the Hospital Authority. (Id. at 4.)

The Hospital Authority filed a petition for chapter 9 bankruptcy on April 30, 2012. (ECF No. 1.) Shortly thereafter, on May 3, 2011, the U.S. Trustee filed the Motion to Dismiss and the Hospital Authority filed the Motion to Convert, the motions at issue here.

## CONCLUSIONS OF LAW

According to 11 U.S.C. § 109(c)(2), an entity may be a debtor under chapter 9 only if, among other things not relevant here, the entity is "specifically authorized, in its capacity as a municipality or by name, to be a debtor under such chapter by State law . . . ." 11 U.S.C. § 109(c)(2). Georgia law states that

> [n]o county, municipality, school district, authority, division, instrumentality, political subdivision, or public body corporate created under the Constitution or laws of this state shall be authorized to file a petition for relief from payment of its debts as they mature or a petition for composition of its debts under any federal statute providing for such relief or composition or otherwise to take advantage of any federal statute providing for the adjustment of debts of political subdivisions and public agencies and instrumentalities.

O.C.G.A. § 36-80-5(a). Accordingly, the U.S. Trustee argues that the Hospital Authority does not have specific authorization to file chapter 9 bankruptcy as required by 11 U.S.C. § 109(c)(2).

The Hospital Authority states in its Motion to Convert that "[p]ursuant to O.C.G.A. §36-80-5, it would appear that a Chapter 9 is not applicable." (ECF No. 7 at 1.) Instead, the Hospital Authority contends that it is eligible for chapter 11 relief because "pursuant to [O.C.G.A.] § 31-7-75(21), hospital authorities have the power, 'to exercise any or all powers now or hereafter possessed by private corporations performing similar functions.' Since a private corporation has the power to file a Chapter 11 and the [Hospital Authority] may exercise any or all

AO 72A
(Rev. 8/82)

powers of a private corporation, [the Hospital Authority] is permitted to file a case under Chapter 11 of the Bankruptcy Code." (ECF No. 7 at 1.)

Obviously, an entity cannot convert a bankruptcy case to a different chapter unless it is eligible to be a debtor under the new chapter. See 11 U.S.C. §§ 706, 1307 (stating that a case may not be converted to another chapter unless the debtor may be a debtor under such chapter). Therefore, whether this case can be converted to chapter 11 turns on whether the Hospital Authority is eligible to be a debtor under chapter 11.[1]

An entity is eligible for chapter 11 if it is "a person that may be a debtor under chapter 7." 11 U.S.C. § 109(d). The term 'person' includes individual, partnership, and corporation, but does not include governmental unit . . . ." 11 U.S.C. § 101(41).

> The term "governmental unit" means United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or **instrumentality of** the United States . . . , a State, a Commonwealth, a District, a Territory, **a municipality**, or a foreign state; or other foreign or domestic government.

11 U.S.C. § 101(27) (emphasis added).

A county is a political subdivision of a state. O.C.G.A. § 50-15-1(1) (defining "political subdivision" to include

---

[1] Because I find that the Hospital Authority is not eligible to be a debtor under chapter 11, I do not reach the issue of whether conversion from chapter 9 to chapter 11 is procedurally possible without a Bankruptcy Code provision that provides for conversion of a case from chapter 9 to another chapter.

counties); In re Cnty. of Orange, 183 B.R. 594, 602 (Bankr. C.D. Cal. 1995). A political subdivision of a state is a municipality. 11 U.S.C. § 101(40) ("'municipality' means political subdivision . . . of a State"). Therefore, Charlton County is a municipality. Accordingly, if the Hospital Authority is an instrumentality of Charlton County, then it is a governmental unit, and therefore not eligible to be a debtor under chapter 11.

The Bankruptcy Code does not define "instrumentality." Therefore, principles of statutory construction dictate that I apply the plain meaning of the word. See In re Yates Dev., Inc., 256 F.3d 1285, 1288-89 (11th Cir. 2001). However, dictionary definitions of "instrumentality" are too general to be instructive. See Black's Law Dictionary (9th ed. 2009) (defining "instrumentality" as "[a] thing used to achieve an end or purpose" or "[a] means or agency through which a function of another entity is accomplished, such as a branch of a governing body"); Oxford English Dictionary (2d ed. 1989) ("instrumentality" means "the fact or function of serving or being used for the accomplishment of some purpose or end; agency"); see also In re Las Vegas Monorail, Co., 429 B.R. 770, 777 (Bankr. D. Nev. 2010) (stating that "no unique or canonical meaning of 'instrumentality' exists").

Because the Bankruptcy Code is ambiguous with respect to the definition of "instrumentality," I must consult extrinsic aids to

AO 72A
(Rev. 8/82)

determine Congress's intent. Legislative history can be a useful guide when a statute's purpose is obscured by ambiguity. Burlington N. R.R. Co. v. Okla. Tax Comm., 481 U.S. 454, 461, (1987). The legislative history of § 101 states,

> Paragraph (21) defines "governmental unit" in the broadest sense. The definition encompasses the United States, a State, Commonwealth, District, Territory, municipality, or foreign state, and a department, agency, or instrumentality of any of those entities. "Department, agency, or instrumentality" does not include an entity that owes its existence to State action, such as the granting of a charter or a license but that has no other connection with a State or local government or the Federal Government. The relationship must be an active one in which the department, agency, or instrumentality is actually carrying out some governmental function.

S. Rep. No. 95-989, at 24 (1978). Unfortunately, the definition of "instrumentality" remains vague. It is unclear what constitutes an "active" relationship with government or when an entity is considered to be "carrying out some governmental function."

There is little case law dealing with the issue of whether an entity is an instrumentality for establishing if it qualifies as a governmental unit. In 2010, the Nevada bankruptcy court held that the Las Vegas Monorail Company, which was formed under general nonprofit corporation statutes, was not a governmental unit because it was not an instrumentality of the State. Las Vegas Monorail, 429 B.R. 770. Therefore, the court held that the company was eligible for chapter 11 relief. Id.

In reaching its decision, the court noted that "statutory or caselaw guidance on what constitutes an instrumentality, or even a municipality, is scarce." Id. at 775. As a result, the court examined cases that addressed whether entities were eligible for chapter 9 as municipalities.[2] The court identified three factors that affect whether an entity is considered a municipality: 1) the extent to which the entity possesses traditional government powers or attributes; 2) the extent of control over the entity possessed by the city, state, or county; and 3) the state's classification of the entity. Id. at 795.

Here, however, the question is not whether the Hospital Authority is a municipality, but rather whether it is a governmental unit. The definition of "governmental unit" is broader than the definition of "municipality." If an entity is a municipality, then it must be a governmental unit. The converse is not true. An entity may be a governmental unit but not a municipality. See 11 U.S.C. § 101(27) (defining "governmental unit" to include "a municipality" and other entities, including instrumentalities of a State or municipality). Nonetheless, I find that the factors identified by the Las Vegas Monorail court

---

[2] According to the Las Vegas Monorail court, "[t]he definition of 'municipality' is somewhat redundant in that it includes an 'instrumentality of the State,' which is a phrase the Code already uses in Section 101(27)'s definition of 'governmental unit.'" 429 B.R. at 775, n.6.

are relevant in determining whether an entity is a governmental unit.

### *Traditional Government Attributes*

The first factor examines whether the entity possesses attributes that traditional government entities typically possess. Attributes that tend to establish that an entity is governmental in nature include: that it is a creature of specific legislative enactment, that it has sovereign immunity, that it may exercise the right of eminent domain, that it is tax-exempt, that it has the power to tax, and that it receives tax revenues. See, e.g., Crosby v. Hosp. Auth. of Valdosta and Lowndes Cnty., 93 F.3d 1515, 1525 (11th Cir. 1996); Las Vegas Monorail, 429 B.R. 770; In re Westport Transit Dist., 165 B.R. 93, 96 (Bankr. D. Conn. 1994); In re Pleasant View Utility Dist. Of Cheatham Cnty., 24 B.R. 632, 635 (Bankr. M.D. Tenn. 1982); In re N. and S. Shenango Joint Mun. Auth., 14 B.R. 414, 415-16 (Bankr. W.D. Pa. 1981); Cox Enters., Inc. v. Carroll City/Cnty. Hosp. Auth., 273 S.E.2d 841, 845 (Ga. 1981).

Here, the Hospital Authority is a creature of specific legislative enactment. It was created pursuant to the Hospital Authorities Law. The Hospital Authority can exercise the right of eminent domain to acquire property. It is exempt from paying taxes in the same way cities and counties are exempt from taxes

for the operation of similar facilities. It is authorized to receive tax revenues from the County's general fund or from an ad valorem tax.

The Hospital Authority is also authorized to issue tax-exempt revenue anticipation certificates which are declared to be issued for an essential public and governmental purpose. In County of Orange, the court explained that the development of revenue bond financing, like the revenue anticipation certificates the Hospital Authority is authorized to issue,

> brought into existence a new type of municipality known as an authority. In some instances they are called commissions or districts, but essentially they are all of the same character that is, a public agency authorized to construct or acquire a revenue-producing utility and to issue bonds for such purpose payable solely out of the revenues derived from the utility."

183 B.R. at 602.

At hearing, the Hospital Authority argued that it is not a governmental unit because it does not have sovereign immunity. However, this is only one of many traditional government attributes that an entity may possess. In fact, courts have found that certain entities are municipalities or governmental units even though the entities did not have sovereign immunity. See Crosby, 93 F.3d at 1519-20; Cox Enters., 273 S.E.2d at 845-46; see also Thomas v. Hosp. Auth., 440 S.E. 2d 195, 196 (Ga. 1994) (holding that a hospital authority is an instrumentality of the government and not entitled to sovereign immunity).

The state of Georgia has "clothed . . . [hospital] authorities with certain necessary governmental qualities. Although hospital authorities may not possess all of the powers enjoyed by municipalities or by the State, they enjoy numerous governmental powers." Crosby, 93 F.3d at 1525 (citations omitted).

### Extent of the County's Control

The second factor examines "whether the authority or agency is subject to control by public authority, state or municipal." In re Green Cnty. Hosp., 59 B.R. 388, 389 (S.D. Miss. 1986) (quoting Ex Parte York Cnty. Natural Gas Auth., 238 F. Supp. 964, 976 (W.D.S.C. 1965)). A board of supervisors appointed by a public authority demonstrates that the government possesses some amount of control over the entity. See Westport Transit Dist., 165 B.R. 93, 95-96; In re Barnwell Cnty. Hosp., No. 11-06207, 2012 WL 1890260, at *7 (Bankr. D.S.C. 2012); cf. In re Ellicott Sch. Bldg. Auth., 150 B.R. 261, 264 (Bankr. D. Colo. 1992) (finding there was no governmental control when the government did not have any power to appoint the authority's directors, and the authority's articles of incorporation provided that the directors could not be elected officials or employees of the school district).

Here, according to the Ordinance, the Hospital Authority "shall consist of a board of nine trustees to be appointed by resolution of the governing body of Charlton County." (ECF No. 58-1 at 3.) Furthermore, courts in Georgia have held that members of a hospital authority's board of trustees are public officials. United States v. Wingo, 723 F. Supp. 798, 803-05 (N.D. Ga. 1989); Richmond Cnty. Hosp. Auth. v. Richmond Cnty., 336 S.E.2d 562, 567 (Ga. 1985).

Governmental control also exists when a public authority has powers related to the dissolution of an entity or the disposition of assets. See Cox Enters., 273 S.E.2d at 845; see also In re Kent, 190 B.R. 196, 204 (Bankr. D.N.J. 1995) (considering whether the state has authority to dissolve the entity and who receives assets upon dissolution when determining whether entity was a governmental unit for § 523(a)(7) purposes). Here, the Hospital Authority must provide public notice and a hearing prior to the sale of any hospital facility. In addition, the Hospital Authority may be dissolved only by joint action of the board of trustees and the Charlton County Board of Commissioners. Upon dissolution, the Hospital Authority cannot convey any of its property to a private person, association, or corporation.

The Hospital Authority argues that it is not controlled by Charlton County because the County does not control the daily operations of the facility. (ECF No. 47 at 6.) However, in Green

16

AO 72A
(Rev. 8/82)

County Hospital, the court held that a county hospital was subject to control by a public authority, the county's board of supervisors, even though the hospital controlled its own day-to-day operations. See 59 B.R. at 390. The court found that the board of supervisors' control of issues relating to property management was sufficient to find that the hospital was a municipality. Id.

### *State Classification*

The final factor considers the state's own classification or description of the entity. When an entity is created as a "body corporate and politic," courts generally find that the entity is a governmental unit. See Westport Transit Dist., 165 B.R. at 95-96; In re Sullivan Cnty. Reg'l Refuse Disposal Dist., 165 B.R. 60, 73 (Bankr. D.N.H. 1994), Pleasant View Utility Dist. Of Cheatham Cnty., 24 B.R. at 635.

Here, the Hospital Authority is a "public body corporate and politic," which was created because the Charlton County Board of Commissioners "deem[ed] it to be in the best interest of Charlton County and the interest and general welfare of the citizens residing therein." (ECF No. 58-1 at 3-4.) In addition, Georgia's Hospital Authorities Law states that all hospital authorities "shall be deemed to exercise public and essential governmental functions." O.C.G.A. § 31-7-75.

According to the Eleventh Circuit, "the legislature has unambiguously stated that [hospital authorities] are "public bodies" which exercise "public and essential governmental functions." Crosby, 93 F.3d at 1525 (citations omitted). Moreover, the Supreme Court of Georgia has held that hospital authorities are instrumentalities created by the State and county for a special purpose. See Thomas, 440 S.E. 2d at 196.

### The Hospital Authority is a Governmental Unit

After weighing the three factors, I find that the Hospital Authority is a governmental unit because it is an instrumentality of Charlton County. The Hospital Authority possesses a number of traditional government attributes, including the power of eminent domain, exemption from taxation, and the ability to receive tax revenues. The Hospital Authority is subject to control by Charlton County because the County appoints the board of trustees and must authorize the Hospital Authority's dissolution. It is also clear, as evidenced by the language of the Hospital Authorities Law, that the state of Georgia intends for all hospital authorities to be considered governmental units.

The Hospital Authority argues that it "essentially stands in the shoes of a private hospital." (ECF No. 47 at 5.) According to the Hospital Authority, because it acts like a private hospital when it treats patients, charges and collects for services, buys

and sells property, and deals with physicians, it does not have traditional government powers. (Id.) While I agree that the Hospital Authority does act, in many ways, like a private hospital, the Hospital Authority ignores the differences between the Hospital Authority and a private hospital. Unlike a private hospital, the Hospital Authority has some traditional government attributes, is subject to control by Charlton County, and is classified by the state as a governmental unit. When an entity possesses powers that are the same as those afforded private companies, "it does not transform an otherwise governmental entity into a private actor . . . ." Crosby, 93 F.3d at 1525.

Furthermore, the Hospital Authority fits the description provided by the United States Supreme Court in the context of the Foreign Sovereign Immunities Act:

> Increasingly during this century, governments throughout the world have established separately constituted legal entities to perform a variety of tasks. The organization and control of these entities vary considerably, but many possess a number of common features. A typical government instrumentality, if one can be said to exist, is created by an enabling statute that prescribes the powers and duties of the instrumentality, and specifies that it is to be managed by a board selected by the government in a manner consistent with the enabling law. The instrumentality is typically established as a separate juridical entity, with the powers to hold and sell property and to sue and be sued. Except for appropriations to provide capital or to cover losses, the instrumentality is primarily responsible for its own finances. The instrumentality is run as a distinct economic enterprise; often it is not subject to the

same budgetary and personnel requirements with which government agencies must comply.

First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba, 462 U.S. 611, 624 (1983).

Accordingly, the Hospital Authority is ineligible for chapter 9 relief because the state of Georgia has not specifically authorized it to file for relief under chapter 9. Additionally, the Hospital Authority is ineligible for chapter 11 relief because it is a governmental unit, and therefore not a person eligible to be a debtor under chapter 11.

The reality is that not every entity is entitled to relief from its debts through bankruptcy. Some entities, like the Hospital Authority, may not be eligible for chapter 9 or chapter 11 relief. "Congress did not intend that the Bankruptcy Code could solve all problems, least of all the financial problems of governmental units." In re N. Mariana Islands Ret. Fund, No. 12-00003, slip op. at 7 (Bankr. D.N.M.I. June 13, 2012).


### ORDER

**IT IS THEREFORE ORDERED** that the Hospital Authority of Charlton County's Motion to Convert from Chapter 9 to Chapter 11 is **ORDERED DENIED**, and

**FURTHER ORDERED** that the U.S. Trustee's Motion to Dismiss is

**GRANTED**.

JOHN S. DALIS
United States Bankruptcy Judge

Dated at Brunswick, Georgia,
this _____ day of July, 2012.